**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
JEFFREY BARTELS,

                Plaintiff,

        -against-

THE INCORPORATED VILLAGE OF LLOYD
HARBOR, MAYOR LELAND M. HAIRR,
DEPUTY MAYOR JEAN THATCHER, JOHN
RITTER, JR., POLICE CHIEF CHARLES
FLYNN, SERGEANT RENALD DIFONZO,
POLICE OFFICER MORRISSEY, POLICE
OFFICER MULLNER, POLICE OFFICER
BAFFA, MARY MOHRMAN, BRIAN
MADSEN, THOMAS **SCHOLL**, JOHN DOES
1 AND 2,

                Defendants.
----------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
10-cv-5076 (ADS)(GRB)

**APPEARANCES:**

**Law Office of James M. Maloney**
*Attorneys for the Plaintiff*
33 Bayview Avenue
Port Washington, NY 11050
    By:    James M. Maloney, Esq., of Counsel

**Morris Duffy Alonso & Faley**
*Attorney for the Defendants The Incorporated Village of Lloyd Harbor, Mayor Leland M. Hairr, Deputy Mayor Jean Thatcher, John Ritter, Jr., Police Chief Charles Flynn, Sergeant Renald Difonzo, Police Officer Morrissey, Police Officer Mullner, Police Officer Baffa, Brian Madsen, and Thomas School*
Two Rector Street
New York, NY 10006
    By:    Carl S. Sandel, Esq., Of Counsel

**Andrea & Towsky, Esqs.**
*Attorney for Defendant Mary Mohrman*
320 Old Country Road, Suite 202
Garden City, NY 11530
    By:    Frank A. Andrea, III, Esq., Of Counsel

**SPATT, District Judge.**

On November 3, 2010, the Plaintiff Jeffrey Bartels commenced this action against the The Incorporated Village of Lloyd Harbor (the "Village"), Mayor Leland M. Hairr, Deputy Mayor Jean Thatcher, John Ritter, Jr., Police Chief Charles Flynn, Sergeant Renald Difonzo, Police Officer Morrissey, Police Officer Mullner, Police Officer Baffa, Brian Madsen, Thomas School, Mary Mohrman, and John Does 1 and 2, arising out of three related occurrences in which the Plaintiff claims that the Defendants acted knowingly and willingly to deprive him of his federal constitutional rights. Presently before the Court is the Plaintiff's motion to amend his complaint for a second time to name six additional public employees of the Village and to add allegations relating to events that occurred subsequent to the filing of the first amended complaint. For the reasons set forth below, the Court denies the Plaintiff's motion in part and grants it in part.

## I. BACKGROUND

### A. Factual Background

The following facts are drawn from the Plaintiffs' first amended complaint ("FAC"). For purposes of this motion to amend, the Court accepts all well-pleaded, nonconclusory factual allegations as true and treats them in the best light for the Plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009); Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009).

The Plaintiff, Jeffrey Bartels, has resided in the Village for more than 43 years. In the FAC, he characterizes himself as "a concerned resident of the Village who has documented and spoken out against, among other matters of public concern: (a) environmental harm, including and especially destruction of healthy trees by Village personnel; and (b) unsafe conditions on and near the roadways of the Village." (FAC, at ¶ 13.) As part of the Plaintiff's efforts to document

2

these supposed harms and exercise his First Amendment rights, Bartels has attempted to take photographs of these conditions. The Plaintiff claims that the Defendants and other Village personnel began an active campaign in 2005 to prevent him from gathering and disseminating information on matters of public concern, by silencing and threatening the Plaintiff through harassment and arrests. These actions were the subject of a separate 42 U.S.C. § 1983 action previously pending in this district. See Bartels v. The Incorporated Village of Lloyd Harbor, 08-CV-1256 (Tomlinson, J.) ("Bartels I"). Ultimately, the Defendants obtained a jury verdict in their favor in Bartels I on March 24, 2011.

The events that are the subject of the present action are alleged to have occurred wholly or substantially after the close of fact discovery in Bartels I. Nevertheless, the Plaintiff views the occurrences relevant to this case as part of "a continuing campaign on the part of Defendants . . . to prevent Plaintiff from gathering and disseminating information about matters of public concern relating to: (a) the destruction of healthy trees by Village personnel, and (b) unsafe conditions on and near the roadways of the Village," and also as retaliation for Plaintiff's having brought Bartels I against many of the Defendants in this action.

**1. The First Occurrence**

The Plaintiff alleges that on or about May 7, 2009, he was driving on a public road in the Village and observed that a support bracket holding up the electric power line and other cables on one of the poles along the road was crooked, i.e., angled at about 45 degrees rather than horizontal as it should have been. The Plaintiff pulled his vehicle over on the side of road to take a closer look, and noticed that one of the two bolts was missing and/or broken. Concerned about the health and safety of Village residents if the power lines should fall, and wanting to take a record of the defect, Bartels retrieved his camera from his vehicle and photographed the pole.

3

According to the Plaintiff, while taking these pictures, Defendant Police Officer Morrissey arrived and told Bartels that he was illegally parked. The Plaintiff claims that he was within a few feet of his vehicle; had not left it unattended; had put the flashers on; and had explained to Morrissey that he had stopped only momentarily to identify the dangerous condition. After both the Plaintiff and the Defendant Morrissey drove away, the Plaintiff pulled over again to use a public pay phone. At that point, Defendant Morrissey also pulled over and then issued the Plaintiff a summons for "illegally parking", based upon the initial time the Plaintiff parked his vehicle to take the photograph.

The Plaintiff further alleges that Defendants Mayor Leland M. Hairr, Deputy Mayor Jean Thatcher, and/or John Ritter, Jr., engaged the services of a Special Prosecutor for the Village, Andrew Ellsworth, Esq., at $375 per hour, to prosecute the Plaintiff for the parking ticket. On November 4, 2009, following a hearing, Plaintiff was found "not guilty" of the alleged "illegal parking" violation.

### 2. The Second Occurrence

The second incident took place on or about December 10, 2009. According to the Plaintiff, about this time, the Defendants began an operation of "mass tree-cutting" within a mile of the Plaintiff's home. Several days before this process began, the Plaintiff had contacted the press and made statements publicly in order to alert the public to the Village's planned tree-cutting, because the "Plaintiff believed and continues to believe that the trees being destroyed (and that have now been destroyed) were healthy oldgrowth trees, and that the operation was in truth designed primarily to yield financial gain to Defendants and others through the sale of the wood." (FAC, at ¶ 34.)

4

At the time of the actual tree cutting on December 10, 2009, the Plaintiff claims he was in the State of Florida. However, a voice mail message was left on the Plaintiff's answering machine on an unknown date, accusing him of "trespassing" at a location adjacent to the tree-cutting site. The message stated:

> Yes, hi, good afternoon, Mr. Bartels, this is [Defendant] Officer Baffa, Lloyd Harbor Police Department. It is around ten after one. I'm calling to advise you that the homeowner at 23 Fiddlers Green had [or 'has'] spotted you on her property and is [unintelligible, possibly 'asking'] us to advise you that you are not wanted on the property and if — the — in future reference if you are on the property she will press charges of trespassing and the violation will be held against you. This is your warning. 23 Fiddlers Green. Do not go on that property. Have a nice day.

(FAC, at ¶ 37.) Thereafter, the Plaintiff sent a letter, dated December 29, 2009, to the Lloyd Harbor Police Department. (Ex. 2.) The Plaintiff received a response in a letter dated January 11, 2010 from the Defendant Police Chief Charles Flynn. It stated that "this department did receive a complaint on December 10, 2009 at 12:40 PM reporting you and your vehicle being on the complainants [sic] property", and stated that the message on Plaintiff's answering machine "was indeed from Police Officer Baffa of this department and was in response to the complaint received." (Ex. 3.) The Plaintiff alleges in his FAC that the homeowner of this property is the Defendant Mary Mohrman. Moreover, the Plaintiff claims that the Lloyd Harbor Police could have corroborated whether he trespassed but did not do so. Thus, he asserts that Mohrman engaged in joint activity with persons acting under color of state law for the purpose of falsely threatening the Plaintiff with trespassing charges, in order to prevent him from further observing and photographing the tree-cutting operation.

5

### 3. The Third Occurrence

Finally, the Plaintiff also bases his complaint on an incident that occurred on March 18, 2010, when once again, he was driving on a public road and observed that a cable and utility line along the roadway was improperly supported and affixed ineffectively to a tree limb. Bartels claims he parked his vehicle some distance away and walked back to the utility line with his camera to photograph the alleged dangerous condition he had observed.

However, according to the Plaintiff, while he was standing on the shoulder of the road taking photographs, a six-wheeled blue Ford truck owned and/or operated by the Defendant Village, and occupied by two employees of the Village, namely, Brian Madsen and/or Tom Scholl and/or John Doe Nos. 1 and 2, approached on the roadway. The Plaintiff alleges that he heard the engine accelerate rapidly, saw the truck turn toward him, and that its occupants attempted to run him down as he stood on the shoulder of the road. Bartels leapt over the guardrail and slid down the adjacent embankment to avoid being hit by the truck, and claims he was injured in the process. As a result of the injuries the Plaintiff allegedly sustained while escaping from the truck, he incurred unreimbursed medical expenses and has sustained other damages, including pain and suffering. The Plaintiff reported this incident to the Village Police Department, including to the Defendant Sergeant Renald Difonzo. However, no Village employees have been charged with any crimes or even formally disciplined by the Village.

### B. Procedural History

As stated above, on November 3, 2010, the Plaintiff commenced this action against the Village and other Defendants. On March 12, 2011, the Plaintiff filed an amended complaint. The Plaintiff asserted four causes of action, alleging: (1) the deprivation of his rights under the First and Fourteenth Amendments by several of the Defendants, for engaging and/or participating in a campaign designed to discourage the Plaintiff from observing and /or

6

photographing matters of public concern; (2) the deprivation of his rights under the due process and equal protection clauses of the Fourteenth Amendment by the Defendant Village, for instituting a policy of selectively and aggressively prosecuting the Plaintiff whenever the opportunity arises; and by several other Defendants for implementing such policy; (3) the deprivation of his rights under the due process clause of the Fourteenth Amendment by several of the Defendants for depriving him of his liberty/and or property interests without due process of law; and (4) the state law claim of assault against certain defendants.

**C. The Present Motion**

On October 12, 2011, the Plaintiff moved this Court pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 15(d) to file a supplemental pleading. All the Defendants, except for Mary Mohrman, submitted a memorandum of law in partial opposition to the Plaintiff's motion seeking leave to amend and/or supplement the complaint. No reply was ever filed.

The proposed amended complaint ("PAC") seeks to add several parties, namely Robert Schwarz, Maureen Dillner, Police Officer Grimm, Police Officer Cortes, Police Officer O'Shaughnessy, and Police Officer Donnaruma. In essence, the Plaintiff seeks to add five more incidents to the Complaint involving these extra defendants. The five additional occurrences are as follows.

    **1. The Fourth Occurrence**

On or about April 17, 2011, after some high winds, the Plaintiff walked across the property of a neighbor, Mr. and Mrs. Bergh, in order to check on the safety of another elderly neighbor, Mrs. Judah. The Plaintiff claims he had permission to cross over the Bergh's property. However, when he attempted to return to his home by once again crossing the property, Police Officers Morrissey and Donnaruma shouted at the Plaintiff that he was "trespassing" on the Bergh's property and pursued him. According to the Plaintiff, Officer Morrissey removed a taser

7

from his holster, placing the Plaintiff in fear of imminent physical harm. However, he was able to escape into the Bergh's home and thereby avoided being pursued and tasered.

### 2. The Fifth Occurrence

On or about June 13, 2011, the Plaintiff claims that he was on a public road and was videotaping utility workers who were damaging a public drainage system. At that time, he alleges in the PAC that Robert Schwarz arrived at the scene and confronted him in a menacing and physically intimidating manner, consequently causing the Plaintiff to stop videotaping in order to avoid physical contact with Schwarz. In the process of avoiding contact, the Plaintiff alleges that he passed to the side of the road where he was not permitted to stand or walk. Subsequently, Officers Grimm and Cortes arrived on the scene. The Plaintiff attempted to leave, but the officers pursued him on foot until he was able to escape into the nearby home of a friend and neighbor.

### 3. The Sixth Occurrence

The Plaintiff owns and lives in a private home within the boundaries of what is known as the Fiddlers Green Association. However, the Plaintiff has protested certain policies of the Association and thus has withheld the dues. On or about June 28, 2011, the Plaintiff was speaking with Police Officer O'Shaughnessy, and was advised that his entry into any of the "common" areas of the Fiddlers Green Association, such as parking areas or roadways, would constitute a trespass. In the PAC, the Plaintiff states that he "reasonably believed and believes Defendant Police Officer O'Shaughnessy's comments to mean that the Village of Lloyd Harbor Police Department and/or Defendant [the Village]: (a) have a policy of enforcing the dues collection efforts of Fiddlers Green Association; (b) effectuate such enforcement as against Plaintiff by threatening Plaintiff with trespassing charges." (PAC, at ¶ 68.)

8

### 4. The Seventh Occurrence

On or about September 29, 2011, the Plaintiff claims that he was on a roadway within the Fiddlers Green Association and was videotaping the water flow that had been diverted by the construction of a "berm" by the Association and/or the Village, the result of which was flooding residents' properties. According to the Plaintiff, Maureen Dillner began following the Plaintiff with her car for a short period of time. He states in the PAC that he believes that Dillner thereafter made a complaint to the Village of Lloyd Harbor Police Department in relation to Plaintiff's videotaping of the water flow and/or his "trespassing" by being on the "common" areas of Fiddlers Green Association.

### 5. The Eighth Occurrence

Finally, on or about October 6, 2011, after dark, the Plaintiff claims that a black Jeep Cherokee drove up to the entrance of the driveway of his home and parked there for approximately ten to fifteen minutes. Then, the driver of the vehicle exited and walked up Bartel's driveway, at which time they argued until the driver left at the Plaintiff's request. Bartel reported the incident of the trespass to the Village Police Department, and Sergeant DiFonzo took a report. According to the Plaintiff, despite his wish that further investigation or prosecution occur, the Village Police Department, the Village, Police Chief Charles Flynn, Sergeant DiFonzo, and Police Officer Grimm have all declined to investigate further.

## II. DISCUSSION

### A. Legal Standard

The Plaintiff has filed the instant motion for leave to file a supplemental pleading under Fed. R. Civ. P. 15(d) ("Rule 15(d)"). This Rule states, in relevant part, that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction,

occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d); see Carter v. Artuz, No. 95 Civ. 2361, 1998 WL 782022, at *2 (S.D.N.Y. Nov. 6, 1998) ("The function of Fed. R. Civ. P. 15(d) is to enable the party to set forth in supplemental pleadings transactions or occurrences or events which have happened since the date of the original pleadings."). A party may supplement his or her pleading through Rule 15(d) to add new defendants and new claims, but only if "adequately related to the originally stated claims." McLean v. Scully, No. 90 Civ. 2590, 1991 WL 274327, at *1 (S.D.N.Y. Dec. 9, 1991) (citations omitted). "Courts in the Second Circuit routinely permit the addition of parties through the filing of a supplemental pleading pursuant to Civil Rule 15(d)." Jackson v. Odenat, No. 09 Civ. 5583, 2012 WL 505551, at *3 (S.D.N.Y. Feb. 14, 2012); see, e.g., McClean v. Scully, No. 90 Civ. 2590, 1991 WL 274327, at *1 (S.D.N.Y. Dec. 9, 1991) (recognizing that relief under Civil Rule 15(d) "may include the addition of new defendants and new claims, if adequately related to the originally stated claims"); see also 6A Wright & Miller, Federal Practice & Procedure § 1504 (3d ed. Supp.2011) ("Litigants also have been allowed to supplement their original pleadings to include new parties when events make it necessary to do so."). Here, Bartels not only seeks to add new events, but also seeks to add new parties.

Where the Plaintiff seeks to add related claims against the same or new defendants, the analysis under Rule 15(a) as to amendments and Rule 15(d) is the same. See M.V.B. Collision, Inc. v. Allstate Ins. Co., 728 F. Supp. 2d 205, 222 (E.D.N.Y.2010) ("The same standard, however, applies to both motions to amend and motions to supplement."); see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 603–04 (2d Cir. 2005) (applying the Foman standard to a motion to amend pursuant to Rule 15(a)); Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir.1995) (applying the Foman standard to a motion to serve a supplemental pleading

10

pursuant to Rule 15(d)).

> Rule 15(a)(2) states in pertinent part:
>
> Amendments Before Trial. . . . a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

A court should deny leave to amend only upon "undue delay, bad faith or dilatory motive on the part of the [moving party], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the [non-moving party,] ... [or] futility." Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 603–04 (2d Cir. 2005) ("a Rule 15(a) motion should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.") (internal quotations and citation omitted). Amendments are generally favored because "they tend to facilitate a proper decision on the merits." Blaskiewicz v. County of Suffolk, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998). However it is ultimately "within the sound discretion of the court whether to grant leave to amend." John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994) (citing Foman, 371 U.S. at 182, 83 S. Ct. 227).

## B. Whether the Plaintiff May Amend or Supplement a Pleading

In the instant case, the Plaintiff seeks to add five additional events that occurred after the filing of the initial amended complaint, and also seeks to add six new defendants. However, the Plaintiff does not seek to add any new causes of action, nor does he seek any new forms of relief. The Defendants assert that the Plaintiff should not be granted leave to amend the complaint to include all five incidents because some of the allegations the Plaintiff seeks to add are futile, in that they fail to state a claim upon which relief may be granted. Therefore, as the parties do not raise or dispute whether the Plaintiff has exhibited undue delay in bringing the instant motion, or

whether the Defendants will be prejudiced, the Court will only look at whether the proposed supplemental allegations are futile.

Under this Court's discretion, it may deny a proposed amendment which would be futile, or which does not establish a sufficient or cognizable claim, or which has no merit. Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied.") Accordingly, an amendment is futile where it is legally insufficient on its face so that it could be defeated by a motion to dismiss. Lucente v. IBM Corp., 310 F.3d 243, 258 (2d Cir. 2002). A claim can only withstand a Rule 12(b)(6) motion if it contains enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

The Defendants specifically object to the Plaintiff supplementing the complaint to include allegations stemming from the "Seventh Incident: Following in Public by Village Employee" at paragraphs 71 through 74 in the PAC, and the "Eighth Incident: Lax Enforcement of the Law on Plaintiff's Behalf" at paragraphs 75 through 77 in the PAC.

As set forth above, the Seventh Incident is based upon the Plaintiff's belief that Maureen Dillner, a Village employee, followed the Plaintiff in her car after he had been videotaping the water flow that had been diverted by the construction of a "berm" by the Association and/or the Village, and then made a complaint to the Village Police Department about the videotaping.

First, the Plaintiff claims that that Dillner's actions deprived him of his rights under the First and Fourteenth Amendments while acting under color of state law. However, the Court agrees with the Defendants that he has made no allegations that Dillner was acting under color of state law in connection with these allegations. See Licari v. Voog, 374 Fed App'x 230, 231 (2d

12

Cir. 2010) ("To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant was acting under color of state law."). Taking the Plaintiff's allegations as true, there is nothing in the PAC that indicates that Dillner was acting within the scope of her employment with the Village, which according to the Defendants, is limited to administrative duties. As the Plaintiff has failed to file a reply and the Court sees no other basis to find that she could have potentially been acting under color of state law, any claims resulting from this occurrence would be futile.

Second, the Plaintiff claims that Dillner violated his rights under the First and Fourteenth Amendments by being a willing participant in effecting the *de facto policy* of the Village to selectively enforce or prosecute him whenever the opportunity arises. However, in order to allege a claim for selective enforcement, the Plaintiff would necessarily need to allege that he was selectively treated—in other words, that there was enforcement or prosecution. See Daweson v. City of New York, 2001 WL 527469 (S.D.N.Y. May 17, 2001) ("In order to establish a violation of equal protection based upon selective enforcement, a plaintiff must show that he or she was: (1) selectively treated as compared with others similarly situated, and (2) that such selective treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.") (citing Latrieste Restaurant & Cabaret Inc. v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994). As Bartels does not allege that any action was taken by the Village in response to Dillner's alleged complaint, the Court agrees that the Plaintiff does not allege any "treatment" resulted from Dillner's complaint and accordingly there can be no claim for recovery.

13

Therefore, the motion to amend the pleadings to add a supplemental claim stemming from the Seventh Incident is denied.

As for the Eighth Incident, the Plaintiff claims that a private individual—not a defendant in this action—trespassed onto his property and thus the Plaintiff made a complaint to the Village Police Department, which was not investigated to his satisfaction. The Defendants point out that a failure to enforce the law against third persons does not give rise to a cognizable claim under the Fourteenth Amendment.

The Plaintiff "cannot establish a constitutional violation where the alleged violation is the state's failure to provide affirmative aid". Edwards v. City of New York, No. 10 Civ. 1047, 2011 WL 5024721, at *5 (E.D.N.Y. Oct. 18, 2011); see Deshaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989) ("[W]e conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."). Therefore, the Court agrees with the defendants that to the extent the Plaintiff seeks relief based on his assertion of an affirmative right for the government to further investigate the trespass, the Plaintiff fails to raise a claim upon which relief may be granted. Accordingly such an allegation would be futile.

In sum, the Court agrees with the Defendants that the Plaintiff should not be permitted to file a supplemental pleading to the extent it includes allegations based upon the Seventh and Eighth incidents. However, as the Defendants do not oppose any other aspect of the Plaintiff's PAC, the Court sees no other reason to deny the motion, and the Plaintiff's application to file a supplemental pleading pursuant to Rule 15(d) in all other respects is granted.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Plaintiffs' motion to file supplemental pleadings is denied in part and granted in part. The Plaintiff is directed to file an amended complaint as set forth above within twenty days of the date of this Order.

**SO ORDERED.**

Dated: Central Islip, New York
July 2, 2012

                                          ___/s/ Arthur D. Spatt_____
                                          ARTHUR D. SPATT
                                      United States District Judge